Deckter v Andreotti (2019 NY Slip Op 01717)





Deckter v Andreotti


2019 NY Slip Op 01717


Decided on March 12, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 12, 2019

Gische, J.P., Webber, Kern, Singh, JJ.


8670 654390/15

[*1]Albert Deckter, derivatively on behalf of Bristol-Myers Squibb Co., Plaintiff-Appellant,
v
Lamberto Andreotti, et al., Defendants-Respondents, Does 1-10, et al., Defendants, Bristol-Myers Squibb Company, etc., Nominal Defendant-Respondent.


Robbins Geller Rudman & Dowd LLP, San Diego, CA (Steven F. Hubachek of the bar of the State of California, admitted pro hac vice, of counsel), for appellant.
Kirkland & Ellis LLP, New York (Yosef J. Riemer of counsel), for respondents.



Judgment, Supreme Court, New York County (Shirley Werner Kornreich, J.), entered on or about August 30, 2017, dismissing the complaint with prejudice, unanimously affirmed, with costs.
Derivative plaintiff/nominal defendant Bristol-Myers Squibb Co. (BMS) is a Delaware corporation. Therefore, "[t]he issue of whether a pre-suit demand is required or excused is governed by the law of Delaware" (Wandel v Dimon, 135 AD3d 515, 516 [1st Dept 2016]). Under Delaware law, appellate review of a lower court's decision to dismiss on the ground that demand was not excused "is de novo and plenary" (Brehm v Eisner, 746 A2d 244, 253 [Del 2000]).
The Court of Appeals has applied an abuse of discretion standard when reviewing a dismissal for failure to make a demand (see Marx v Akers, 88 NY2d 189, 192 [1996]). However, Marx involved a New York corporation, not a Delaware one (see Marx v Akers, 215 AD2d 540 [2d Dept 1995], affd 88 NY2d 189 [1996]).
Where, as here, "the subject of a derivative suit is . . . a violation of the Board's oversight duties" (Wood v Baum, 953 A2d 136, 140 [Del 2008]), the criteria for determining whether plaintiff's failure to make a pre-suit demand on the board is excused are set forth in Rales v Blasband (634 A2d 927 [Del 1993]) (see e.g. Wood, 953 A2d at 136; Wandel, 135 AD3d at 517). Although plaintiff also alleges that defendants signed BMS's annual reports on U.S. Securities and Exchange Commission's Form 10-K, "the issuance of false or misleading statements in public filings . . . constitute[s] . . . a violation of the Board's oversight duties and thus is governed by Rales for purposes of a demand futility analysis" (Steinberg v Bearden, 2018 WL 2434558, *8, 2018 Del Ch LEXIS 169, *19 [May 30, 2018, C.A. No. 2017-0286-AGB] [internal quotation marks omitted]).
Under Rales, "a court must determine whether . . . the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand" (634 A2d at 934). The " mere threat of personal liability . . . is insufficient to challenge either the independence or disinterestedness of directors'" (id. at 936). However, "a substantial likelihood" of liability "disables [a director] from impartially considering a response to a demand by" a stockholder (id.).
"Where, as here, directors are exculpated from liability except for claims based on fraudulent, illegal or bad faith conduct, a plaintiff must . . . plead particularized facts that demonstrate that the directors acted with scienter, i.e., that they had actual or constructive knowledge that their conduct was legally improper" (Wood, 953 A2d at 141 [internal quotation marks omitted]; see also Security Police & Fire Professionals of Am. Retirement Fund v Mack, 93 AD3d 562, 565 [1st Dept 2012]).
Even though the complaint alleges that BMS' audit committee and senior management knew about gaps in the company's internal controls, it fails to establish bad faith or scienter where a document submitted by defendants on their CPLR 3211(a)(1) motion shows that each internal audit report also included specific remedial actions (see Oklahoma Firefighters Pension & Retirement Sys. v Corbat, 2017 WL 6452240, 2017 Del Ch LEXIS 848 [Dec. 18, 2017, C.A. No. 12151-VCG]; In re Qualcomm Inc. FCPA Stockholder Derivative Litig., 2017 WL 2608723, 2017 Del Ch LEXIS 106 [June 16, 2017, C.A. No. 11152-VCMR]; see also Horman v Abney, 2017 WL 242571, 2017 Del Ch LEXIS 13 [Jan. 19, 2017, C.A. No. 12290-VCS]).
Plaintiff's contention that defendants face a substantial likelihood of liability because they signed 10-K's that contained false statements is also unavailing. It is true that "when directors communicate publicly . . . about corporate matters[,] the sine qua non of directors' fiduciary duty to shareholders is honesty" (Malone v Brincat, 722 A2d 5, 10 [Del 1998]). However, "to establish liability for misstatements when the board is not seeking shareholder action, shareholder plaintiffs must show that the misstatement was made knowingly or in bad faith" (In re Citigroup Inc. Shareholder Derivative Litig., 964 A2d 106, 135 [Del Ch 2009]; see also Steinberg, 2018 WL 2434558 at *10 n 78, 2018 Del Ch LEXIS 169 at *26 n 78). Furthermore, "a board is not required to engage in self-flagellation and draw legal conclusions implicating itself in a breach of fiduciary duty from surrounding facts and circumstances prior to a formal adjudication of the matter" (In re Pfizer Inc. Shareholder Derivative Litig., 722 F Supp 2d 453, 465 [SD NY 2010] [internal quotation marks omitted]).
Because the court properly dismissed the complaint on the ground that demand was not excused, we need not consider whether plaintiff states claims for breach of fiduciary duty and unjust enrichment.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: MARCH 12, 2019
CLERK